**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| INDYMAC BANK, F.S.B., <br> a Federal Saving Bank, <br><br> Plaintiff, <br><br> v. <br><br> GANESAN VISVABHARATHY, an <br> individual and HAWTHORNE ORLANDO <br> CORPORATION, a Florida corporation, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 07 C 6224 <br><br> Honorable Ronald A. Guzman |

**PLAINTIFF'S PRELIMINARY REPLY TO DEFENDANT**
**VISVABHARATHY'S RESPONSE TO MOTION FOR DEFAULT**

Plaintiff, INDYMAC BANK, F.S.B. ("Indymac") hereby files its Preliminary Reply to

Defendant Visvabharathy's Response to Motion for Default, and respectfully states as follows:

**Preliminary Statement**

On November 2, 2007, Indymac filed a Complaint for breach of an unconditional

guaranty ("Guaranty") provided by Ganesan Visvabharathy ("Defendant"), guarantying

repayment of a loan Indymac extended to one of Defendant's businesses. That loan is in default

with a balance of more than $48 million due and owing. Defendant has no substantive defenses

to Indymac's claim. *See Guaranty*, ¶5 (waiving defenses).[1]

Defendant was served by substitute service on his wife. Defendant has filed a Response

to Indymac's Motion for Default requesting that the Court quash service of summons on the

grounds that Defendant is estranged from his wife and that the place she was served is not his

abode. Despite inquiries by Plaintiff (and two federal judges in related cases) Defendant has

refused to accept service or provide his current address so he can be served by non-disputed

---

[1] A copy of the Guaranty is attached hereto as Exhibit 1.

means. Defendant also made himself unavailable for service by leaving the country on one or more occasions since October 2007. *See Def's Aff. at ¶4*, a copy of which is attached as Exh.B of Defendant's Response.

A signed return of service constitutes *prima facie* evidence of valid service which can only be overcome by *strong and convincing evidence*. Defendant's arguments do not constitute strong and convincing evidence sufficient to discharge his burden of proof that service was somehow invalid. Defendant has offered nothing more than unsupported conclusory assertions that he has established a different dwelling house or place of abode. *Not one piece of concrete evidence from which that assertion can be verified has been submitted by Defendant.* As such, Defendant's request to quash service should be denied.

Alternatively, if this Court believes Defendant has put forth significant evidence to create an issue of fact, then Plaintiff requests leave to issue expedited discovery, including the depositions of the affiants.

### The Applicable Law

A signed return of service constitutes *prima facie* evidence of valid service which can be overcome only by **strong and convincing evidence**. *O'Brien v. R.J. O'Brien & Assoc., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (emphasis added). An uncorroborated affidavit merely stating that the movant has not been personally served is insufficient. *Fleet Mortgage Corp. v. Wise*, Case No. 92 C 1102, 1997 WL 305319, at *2 (N.D.Ill. May 29, 1997). Supporting documentation or other clear and convincing corroborating evidence is necessary. *See, e.g., Paul v. Ware*, 630 N.E.2d 955, 958, 258 Ill.App.3d 614, 618 (Ill.Ct.App. 1994) (instructing same and refusing to quash service or vacate default judgment where defendant merely stated in his affidavit that he was not served and presented no supporting documentation).

The movant challenging service has the burden of demonstrating that he in fact resides somewhere else as he has the best access to information regarding his actual place of residence or living arrangement. *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005) (instructing for same reason that movant may challenge service by demonstrating that the address served was incorrect).[2] See *also Rosa v. Cantrell*, 705 F.2d 1208, 1216 (10th Cir. 1982) (finding that defendant's mere statement that the house where his wife and child lived was no longer his abode is not enough; rather, defendant has burden to show that he in fact established a new abode); *Capital Life Ins. Co. v. Rosen*, 69 F.R.D. 83, 88 (E.D.Pa. 1975) (refusing to quash service where defendant made no showing that he in fact resided somewhere else).

## Argument

On November 2, 2007, Indymac filed its Complaint for Defendant's breach of Guaranty agreement. On December 1, 2007, the process server effected Abode Service on Defendant by serving Summons and Complaint on Defendant's wife at their last-known marital address, located at 7529 Ridgewood Lane, Burr Ridge, Illinois 60527 ("Marital Home"). A copy of the process server's signed Affidavit of Service is attached as Exhibit 2.

The Marital Home is Defendant's last known address. See copy of search of People Finder on Westlaw, attached hereto as Exhibit 3. Furthermore, the Marital Home is jointly owned by Defendant and his wife as tenants by the entirety. See Real Property Transaction Record attached hereto as Exhibit 4.

Defendant asserts that the Marital Home is not his usual place of abode and that he moved out of the Marital Home in summer 2006 and established his own separate abode. *See*

---

[2] *See also* the following cases cited by Defendant in which service was quashed *after* the defendants identified the address at which they claimed to be living at the time of service. *Williams v. Capital Transit Co.*, 215 F.2d 487, 489 (D.C.Cir. 1954) (quashing service where defendant provided specific address at which he claimed to live as opposed to address where he was served); *Gov't Employees Ins. Co. v. Jackson,* No. Civ.A. 89-4010, 1995 WL 672830, at *2 (E.D.Pa. Nov. 6, 1995) (same).

*Def's Aff.* at ¶¶2-3. He provides no address or documentary evidence from which his statements can be verified.

Nor does the affidavit of Defendant's wife cure these evidentiary deficiencies as she likewise simply states without any corroborating evidence the same conclusory assertions made by Defendant, only with less conviction as it is merely her "understanding" that Defendant "established his own separate abode." *Sastri Aff. at ¶¶2-3,* a copy of which is attached as Exh.A of Defendant's Response. Without concrete, corroborating evidence supporting her affidavit, let alone an address and contact information through which she communicates with Defendant, there is no way to verify her conclusory assertions.[3] Like Defendant, she provides none.

Defendant states in a similar conclusory fashion that he is separated from his wife and divorce proceedings are pending, but provides no other specifics. *Def's Aff.* at ¶2.

Indymac has inquired, as have Judges Gottschall and Anderson in related cases pending against Defendant in this District[4], whether Defendant would accept service or provide his current address so that service could be effected by non-disputed means. *See, e.g., Pl's Counsel's letter of February 6, 2008*, attached hereto as Exhibit 6. Indymac has also requested evidence from which it can verify Defendant's assertions. Defendant has rejected or ignored all such inquiries.

---

[3] Mrs. Sastri's version of the events surrounding service is disputed, but even if accurate is irrelevant to the matter at issue. *See Blackhawk Heating & Plumbing Co. v. Turner*, 50 F.R.D. 144, 148 (D.Ariz. 1970) (finding competing versions regarding how contentious service of process was effected to be irrelevant to whether the apartment served was a dwelling house or abode for defendant).

[4] *See IBA, LLC v. Visvabharathy*, Case No. 07 CV 6219, Honorable Wayne R. Andersen presiding, and *Indymac v. Visvabharathy*, Case No. 07 CV 06226, Honorable Joan B. Gottschall presiding, in which Indymac and its affiliate IBA have sued Defendant for breach of Guaranty for other loans extended to a different business owned by Defendant. Approximately $45 million is due and owing by Defendant on those obligations. On February 5, 2008, and due to Defendant's delay in contesting service until after an Order of Default had been entered, Judge Anderson entered judgment against Defendant for $10,348,488.62. A copy of the Order of Judgment is attached hereto as Exhibit 5.

All necessary documentary evidence that can verify Defendant's and his wife's assertions are easily within Defendant's control and were well within his ability to produce to this Court as exhibits supporting his affidavit. He chose not to do so. Defendant does so against the weight of the public record which indicates that Defendant jointly owns the Marital Home with his wife, it is his last known place of address, and his family lives there.

In short, Defendant has failed to carry his burden of establishing by strong and convincing evidence that service was invalid. Indymac's Motion for Default should be granted and Defendant's request to quash service denied.

### Plaintiff's Request to Issue Discovery

Should the Court nevertheless find that Defendant has sufficiently carried his evidentiary burden at this stage of the case to shift the burden of proof back to Indymac, Indymac requests that the Court grant it discovery, including against Defendant and his wife, so that their conclusory statements can be verified.

### Conclusion

WHEREFORE, Plaintiff Indymac Bank, F.S.B. respectfully requests that the Court:

A.    Deny Defendant's request to quash service;

B.    Grant Indymac's Motion for Default;

C.    Set a hearing date for prove-up of damages;

D.    In the alternative, grant Indymac discovery, including against Defendant and his wife, and assess all costs and expenses for same against Defendant; and

5

E.  Grant such further relief as the Court deems just and proper.

Respectfully submitted,
INDYMAC BANK, F.S.B.


By:  /s/ James G. Martignon
One of Its Attorneys

Gary I. Blackman (ARDC #6187914)
James G. Martignon (ARDC #6277974)
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, IL  60602
(312) 346-8380 – Telephone
(312) 346-8434 – Facsimile
gblackman@lplegal.com
jmartignon@lplegal.com

# EXHIBIT 1

05-06-2006

Loan No. 52-9930000



## GENERAL GUARANTY

(Real Estate Secured Loan)

TO:   INDYMAC BANK, F.S.B.

THIS GENERAL GUARANTY ("Guaranty"), dated May 06th, 2006, is made by GANESAN VISVABHARATHY AND HAWTHORNE ORLANDO CORPORATION, a Florida corporation (individually and collectively the "Guarantor"), in favor of INDYMAC BANK, F.S.B. (the "Lender"), and is executed pursuant to the Building Loan Agreement dated as of the date of this Guaranty between the Lender and HAWTHORNE GRANDE LIMITED PARTNERSHIP, a Florida limited partnership (the "Borrower") (such Building Loan Agreement, as it may from time to time be supplemented, modified and amended, being referred to in this Guaranty as the "Agreement"), the provisions of which are incorporated in this Guaranty by reference. The Agreement provides, among other things, for rules of construction which apply to this Guaranty. Capitalized terms used in this Guaranty and not otherwise defined are used with the meanings set forth in the Agreement.

Subject to the terms and conditions set forth in the Agreement, the Lender has agreed to make a loan to the Borrower in the amount of $46,295,000.00 (the "Loan") to finance the real estate project of the Borrower known as Hawthorne Grande (the "Project"). The Loan will be secured by a Mortgage executed by the Borrower with respect to the Project. As a condition of the obligation of the Lender to make the Loan, the Guarantor is required to execute and deliver to the Lender this Guaranty.

To induce the Lender to make the Loan and for other valuable consideration, the Guarantor agrees as follows:

1.    Guaranteed Obligations.  The Guarantor absolutely and unconditionally guarantees the punctual and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the following (the "Guaranteed Obligations"): (a) all present and future indebtedness evidenced by the Note dated the date of this Guaranty in the face principal amount of $46,295,000.00 executed by the Borrower to the order of the Lender, including principal, interest and all other amounts payable under the terms of the Note; and (b) all other present and future obligations of the Borrower to the Lender under the Loan Documents (including any Environmental Indemnity executed by the Borrower in favor of the Lender and obligations in respect of Letters of Credit and Set Aside letters); in each case as such indebtedness and other obligations may from time to time be supplemented, modified, amended, renewed and extended, whether evidenced by new or additional Documents or resulting in a change in the interest rate on any indebtedness or otherwise. Upon the occurrence of any Event of Default, all Guaranteed Obligations shall, at the option of the Lender, immediately become due and payable by the Guarantor without protest, presentment, notice of dishonor, demand or further notice of any kind, all of which are expressly waived by the Guarantor, and irrespective of whether any Guaranteed Obligations have then become due and payable by the Borrower or any other Loan Party (each of the Borrower and any other Loan Party other than the Guarantor being referred to in this Guaranty as an "other Loan Party").

2.    Nature of Guaranty.  This Guaranty is a guaranty of payment and performance and not of collection and applies to all Guaranteed Obligations, whether existing now or in the future, including (a) interest and other Guaranteed Obligations arising or accruing after bankruptcy of any Loan Party or any sale or other disposition of any security for this Guaranty or for the obligations of any other Loan Party (any such security being referred to in this Guaranty as the "Security"), and (b) any Guaranteed Obligations that survive repayment of the Loan.  This Guaranty and any Security for this Guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment or performance of any Guaranteed Obligations is rescinded or must otherwise be returned by the Lender or any other Person upon the bankruptcy, insolvency or reorganization of any Loan Party or otherwise, all as though such payment or performance had not occurred.  The Guarantor shall have no authority, and hereby waives any right to revoke this Guaranty, but if any purported revocation shall be deemed to have occurred by operation of law or otherwise, the provisions of this Guaranty shall continue to apply notwithstanding such revocation.

3.    Obligations Independent.  The obligations of the Guarantor under this Guaranty are independent of the obligations of any other Loan Party under the Loan Documents (such obligations of any other Loan Party, including the Borrower's obligations in respect of the Guaranteed Obligations, being referred to in this Guaranty as the "Other Obligations") and any Security, and the enforceability of any Security for this Guaranty is likewise independent of any such Other Obligations and any other Security.  The Lender may bring action against the Guarantor and otherwise enforce this Guaranty or any Security for this Guaranty without bringing action against any other Loan Party or joining any other Loan Party in any action against the Guarantor, and otherwise independently of any other Remedy that may be available to the Lender at any time with respect to any Other Obligations or Security.  The Guarantor waives any right to require the Lender at any time to proceed against any other Loan Party, apply any Security or otherwise enforce, proceed against or exhaust any Other Obligations or Security or pursue any other Remedy in the Lender's power.

4.    Action with Respect to Other Obligations or Security.  The Guarantor authorizes the Lender, without notice or demand and without affecting its liability under or the enforceability of this Guaranty or any Security for this Guaranty, from time to time to:  (a) supplement, modify, amend, renew, extend, accept partial payments on or performance on or otherwise change the time, manner or place of payment or performance or the interest rate or other terms or the amount of, or release, reconvey, terminate, waive, abandon, subordinate, exchange, substitute, transfer or consent to the transfer of or enter into or give any other agreement, approval, waiver or consent with respect to or in exchange for any Other Obligations or Security or any of the Loan Documents; (b) receive and hold additional Security or guaranties; (c) release any other Loan Party from any personal liability with respect to any Other Obligations and participate in any bankruptcy or reorganization of any other Loan Party in such manner as the Lender may determine; and (d) accelerate, settle, compromise, compound, sue for, collect or otherwise liquidate, enforce or deal with any Other Obligations or Security (including judicial or nonjudicial sale or other disposition of any Security), bid and purchase at any sale or other disposition of any Security and apply any Security and any proceeds or other payments received by the Lender, in each case in such order and manner as the Lender may determine.

5.    Waiver of Defenses.  The Guarantor waives any defense to the enforcement of this Guaranty or any Security for this Guaranty arising by reason of:

2

(a) any present or future Laws or orders affecting the terms of, or the Lender's Remedies with respect to, any Other Obligations or Security; (b) the absence or cessation of personal liability of any other Loan Party with respect to any Other Obligations; (c) the failure of any other Person to execute this Guaranty or any other guaranty or agreement; (d) the failure of any Loan Party to properly execute any Loan Document or otherwise comply with applicable legal formalities; (e) the unenforceability or invalidity of any Other Obligations or Security or the lack of perfection or failure of priority of any other loss or impairment of any Security; (f) any discharge or release of any other Loan Party or any Other Obligations or Security or any impairment or suspension of any Remedies of the Lender, whether resulting from any act or omission of the Lender or any other Person or by operation of law or otherwise; (g) any bankruptcy, insolvency or reorganization of any Loan Party or any disability or other defense of any other Loan Party with respect to any Other Obligations or Security; (h) any failure of the Lender to disclose to the Guarantor any information relating to the financial condition, operations, properties or prospects of any other Loan Party now or in the future known to the Lender (the Guarantor waiving any duty on the part of the Lender to disclose such information); (i) any failure of the Lender to monitor proper application of loan funds or compliance with the Loan Documents, or to preserve, insure or protect any Security or any subrogation, contribution or reimbursement rights of the Guarantor; (j) any application of proceeds or payments received by the Lender to obligations other than the Guaranteed Obligations; (k) any other action by the Lender, whether authorized by § 4 or otherwise, or any omission by the Lender or other failure of the Lender to pursue, or any delay in pursuing, any other Remedy in the Lender's power; or (l) any defense arising from a claim that the obligations of the Guarantor are greater than those of the Borrower or any other Loan Party. Guarantor waives all rights and defenses arising out of any election of remedies by the Lender, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the Guarantor's rights of subrogation and reimbursement against the principal by the operation of principles of subrogation, contribution, indemnification or otherwise.

The Guarantor waives all rights and defenses that the Guarantor may have because the Borrower's debt is secured by real property.  This means, among other things:

1.    The Lender may collect from the Guarantor without first foreclosing on any real or personal property collateral pledged by the Borrower.

2.    If the Lender forecloses on any real property collateral pledged by the Borrower:

(A)    The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.

(B)    The Lender may collect from the Guarantor even if the Lender, by foreclosing on the real property collateral, has destroyed any right the Guarantor may have to collect from the Borrower.

This is an unconditional and irrevocable waiver of any rights and defenses the Guarantor may have because the Borrower's debt is secured by real property.

3

The Guarantor further waives: (i) any defense to the recovery by the Lender against the Guarantor of any deficiency or otherwise to the enforcement of this Guaranty or any Security for this Guaranty after a nonjudicial sale or other disposition of any Security for any Other Obligations that is determined, for any reason, to not have been conducted in a commercially reasonable manner, even though, in the case of any such Security subject to the Uniform Commercial Code, such failure may prevent the Guarantor from exercising Reimbursement Rights against any other Loan Party; (ii) any rights, defenses or benefits that are or may be available to the Guarantor by reason of suretyship principles, or comparable provisions of the Laws of any other jurisdiction and all other suretyship defenses it would otherwise have under the Laws of Florida or any other jurisdiction; (iii) all benefits of any statute of limitations affecting the Guarantor's liability under or the enforcement of this Guaranty or any Other Obligations or Security; (iv) all setoffs and counterclaims; (v) promptness, diligence, presentment, demand for performance and protest; (vi) notice of nonperformance, default, acceleration, protest or dishonor; (vii) except for any notice otherwise required by applicable Laws, that may not be effectively waived by the Guarantor, notice of sale or other disposition of any Security; and (viii) notice of acceptance of this Guaranty and of the existence, creation or incurring of new or additional Guaranteed Obligations, and all other notices of any kind with respect to any Other Obligations.

6.    Waiver of Reimbursement Rights.  Until all Other Obligations have been paid and performed in full, the Guarantor shall not exercise any rights of subrogation, reimbursement, contribution or indemnification or any similar rights or remedies (collectively, "Reimbursement Rights") against any other Loan Party, and waives any right to enforce any Remedy which the Lender now has or may in the future have against any other Loan Party and any benefit of, and any right to participate in, any Security or Other Obligations now or in the future held by the Lender. If the Guarantor nevertheless receives payment of any amount on account of any such Reimbursement Rights or otherwise in respect of any payment or performance by the Guarantor of any Guaranteed Obligations prior to payment and performance in full of all Other Obligations, such amount shall be held in trust for the benefit of the Lender and immediately paid to the Lender for application to the Other Obligations in such order and manner as the Lender may determine.

7.    Representations of the Guarantor.  The Guarantor represents and warrants to the Lender that: (a) this Guaranty is executed at the request of the Borrower; (b) the Guarantor has established adequate means of obtaining from any other Loan Parties on a continuing basis information pertaining to, and is now and on a continuing basis will be completely familiar with, the financial condition, operations, properties and prospects of such other Loan Parties; (c) the Guarantor has received and approved copies of all of the other Loan Documents; and (d) no oral promises, assurances, representations or warranties have been made by or on behalf of the Lender to induce the Guarantor to execute and deliver this Guaranty.

8.    Financial Statements and Tax Returns.  Ganesan Visvabharathy hereby agrees to deliver to the Lender, the following: (a) within one hundred twenty (120) days after the end of each fiscal year of Ganesan Visvabharathy for so long as any portion of the Loan is outstanding, Financial Statements for Ganesan Visvabharathy, in form and detail satisfactory to Lender, for and as at the end of each fiscal year, (b) after the end of each quarter for Ganesan Visvabharathy, Financial Statements for and as at the end of such quarter verifying cash liquidity amounts of Ganesan Visvabharathy in form and detail satisfactory to Lender, (c) tax returns including K-1's for Ganesan Visvabharathy

4

within thirty (30) days of filing, and (d) upon request by the Lender from time to time, copies of Financial Statements prepared on behalf of Ganesan Visvabharathy, in each case certified in a manner acceptable to the Lender.

9.    Indemnification by the Guarantor.    Without limitation on any other obligations of the Guarantor or Remedies of the Lender under this Guaranty, the Guarantor shall indemnify, defend and save and hold harmless the Lender from and against, and shall pay on demand, any and all losses, liabilities, damages, costs, expenses and charges (including the reasonable fees and disbursements of the Lender's legal counsel) suffered or incurred by the Lender as a result of (a) any failure of any Guaranteed Obligations to be the legal, valid and binding obligations of the Borrower enforceable against the Borrower in accordance with their terms, except as enforcement may be limited by bankruptcy, insolvency or other similar Laws affecting the rights of creditors generally, or (b) any failure of the Borrower to pay and perform any Guaranteed Obligations in accordance with the terms of such Guaranteed Obligations.

10.    Rights of Setoff.    Upon the occurrence and during the continuance of any Event of Default, the Lender is authorized at any time and from time to time to the fullest extent permitted by applicable Laws, and without notice or demand, to set off and apply any and all deposits (general or special, time or demand, provisional or final) at any time held and other indebtedness at any time owing by the Lender to or for the credit or account of the Guarantor against any and all obligations of the Guarantor under this Guaranty.

11.    Waivers and Amendments.    No supplement to, modification or amendment of, or waiver, consent or approval under, any provision of this Guaranty shall be effective unless in writing and signed by the Lender, and any waiver, consent or approval shall be effective only in the specific instance and for the specific purpose for which given.

12.    Remedies.    Each of the Remedies provided in this Guaranty is cumulative and not exclusive of, and shall not prejudice, any other Remedy provided in this Guaranty or by applicable Laws or under any other Loan Document. Each Remedy may be exercised from time to time as often as deemed necessary by the Lender, and in such order and manner as the Lender may determine. No failure or delay on the part of the Lender in exercising any Remedy shall operate as a waiver of such Remedy; nor shall any single or partial exercise of any Remedy preclude any other or further exercise of such Remedy or of any other Remedy.

13.    Costs and Expenses.    The Guarantor shall pay to the Lender on demand all costs, expenses and charges of the Lender in connection with the enforcement of, or the exercise of any Remedy or any other action taken by the Lender under or in connection with, this Guaranty or any Guaranteed Obligations, including the reasonable fees and disbursements of the Lender's legal counsel and other out-of-pocket expenses.

14.    Notices.    All notices and other communications provided under this Guaranty shall be in writing and mailed or delivered to the Guarantor at the address set forth on the signature page of this Guaranty or at any other address in the State of Florida as may be designated by the Guarantor in a written notice sent to the Lender in accordance with § 7.03 of the Agreement. Any notice or other communication will be effective (a) if given by mail, on the earlier of receipt or the third day after deposit in the

5

United States mails with first-class postage prepaid, or (b) if given by personal delivery, when delivered.

15.     Binding Agreement.  This Guaranty shall be binding on and inure to the benefit of the Guarantor and the Lender and their respective successors and assigns, except that the Guarantor shall have no right to assign any interest under this Guaranty without the prior written consent of the Lender.  The Lender may from time to time assign its interest under this Guaranty in whole or in part without notice to or the consent of the Guarantor.

16.     Multiple Guarantors.  If more than one Person signs this Guaranty as Guarantor, (a) the term "Guarantor" shall mean each such Person, (b) the obligations of each Guarantor shall be joint, several and independent, and (c) this Guaranty shall be construed and enforced as though each Guarantor executed a separate guaranty on the terms set forth in this Guaranty.

17.     Governing Law.  This Guaranty has been delivered in Florida and shall be governed by, construed and enforced in accordance with the laws of Florida.

18.     Time of Essence.  Time is of the essence of each and every provision of this Guaranty.

19.     Nature of Waivers.  THE GUARANTOR HEREBY ACKNOWLEDGES THAT. (A) THE GUARANTOR HAS CONSULTED WITH LEGAL COUNSEL TO UNDERSTAND THE FULL IMPACT OF THE WAIVERS MADE BY THE GUARANTOR PURSUANT TO THIS GUARANTY, INCLUDING THOSE SET FORTH IN SS. 2, 3, 4, 5, 6 AND 20 HEREOF, (B) THE GUARANTOR UNDERSTANDS THE FULL IMPACT OF SUCH WAIVERS, AND (C) SUCH WAIVERS HAVE BEEN KNOWINGLY AND WILLINGLY MADE BY THE GUARANTOR.

20.     Waiver of Jury Trial.  EACH OF THE LENDER AND THE GUARANTOR WAIVE TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING (INCLUDING COUNTERCLAIMS), WHETHER AT LAW OR EQUITY, BROUGHT BY THE LENDER OR THE GUARANTOR AGAINST THE OTHER ON MATTERS ARISING OUT OF OR IN ANY WAY RELATED TO OR CONNECTED WITH THIS GUARANTY, THE OTHER LOAN DOCUMENTS, THE LOAN OR ANY TRANSACTION CONTEMPLATED BY, OR THE RELATIONSHIP BETWEEN THE LENDER AND THE GUARANTOR OR ANY OTHER LOAN PARTY OR ANY ACTION OR INACTION BY ANY PARTY UNDER, ANY OF THE LOAN DOCUMENTS.

21.     Financial Covenants.     Guarantor acknowledges that Ganesan Visvabharathy's net worth is a significant consideration to Lender in connection with the making of the Loan.     Accordingly, so long as any portion of the Loan remains outstanding, Ganesan Visvabharathy covenants and agrees to maintain the following financial capabilities.  Any failure by Ganesan Visvabharathy to maintain such financial capabilities shall constitute an Event of Default.

(a)     Tangible net worth of not less than $52,500,000.00 measured annually.  Tangible net worth shall mean the excess of Assets over Liabilities, excluding however, from the determination of Assets: (i) all assets that would be classified as intangible assets under GAAP, or such other accounting principles as Lender may find acceptable from time to time, including, without limitation, goodwill (whether representing

6

the excess of cost over book value of assets acquired or otherwise) negative goodwill, patents, trademarks, trade names, copyrights, franchises and deferred charges (including, without limitation, unamortized debt discount and expense, organization costs and research and development costs); and (ii) subordinated debt.

(b)   As of the date hereof and until August 10, 2006, liquid assets of not less than $1,500,000.00. Effective August 10, 2006 and as of the end of each calendar quarter thereafter, liquid assets of not less than $5,000,000.00. Liquid assets shall mean cash or readily marketable public traded securities with an investment grade rating by a nationally recognized rating agency.

(c)   A maximum debt to worth ratio not exceeding 2.0 to 1.0, measured annually. Debt shall mean all debts and monetary obligations of Ganesan Visvabharathy, including contingent obligations, and worth shall be determined as set forth in this section.

"GUARANTOR":

Ganesan Visvabharathy

Hawthorne Orlando Corporation, a Florida corporation

By:_____
      Ganesan Visvabharathy, President

(Corporate Seal)

Address of Guarantor:
101 Burr Ridge Parkway, Suite 306
Burr Ridge, Illinois 60527

87981_2.DOC

7

**EXHIBIT 2**

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

SUMMONS IN A CIVIL CASE

INDYMAC BANK, F.S.B,
a Federal Savings Bank

                                        Plaintiff,

                V.

GANESAN VISVABHRATHY,
an individual, and HAWTHORNE ORLANDO
CORPORATION, a Florida corporation
                                        Defendants

CASE NUMBER:

ASS    07CV6224
       JUDGE GUZMAN
DES    MAGISTRATE JUDGE BROWN
MAG

TO: (Name and address of Defendant)

Ganesan Visvabharathy
7529 Ridgewood Ln
Burr Ridge, IL 60527-8022

YOU ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Gary L. Blackman (ARDC #6187914)
James G. Martignon (ARDC #6277974)
Levenfeld Pearlstein, LLC
2 N. LaSalle St., Ste. 1300
Chicago, IL 60602

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

MICHAEL W. DOBBINS, CLERK

(By) DEPUTY CLERK

NOV 0 2 2007

DATE

ClientCaseID:  GARY BLACKMUN
Law Firm ID:   LEVENFEL



CaseReturnDate:  12/28/07

Affidavit of Special Process Server

## UNITED STATES DISTRICT COURT

Case Number 07CV6224

I, MICHAEL P. FEEHAN

FIRST DULY SWORN ON OATH STATES THAT I AM OVER 18 YEARS OF AGE AND NOT A PARTY TO THIS SUIT AND IS A REGISTERED EMPLOYEE OF ILLINOIS DEPARTMENT OF PROFESSIONAL REGULATION PRIVATE DETECTIVE AGENCY #117-001292 STERN PROCESS & INVESTIGATION LLC 205 W. RANDOLPH ST. #1210 CHICAGO IL 60606

## ABODE SERVICE

THAT I SERVED THE WITHIN    SUMMONS AND COMPLAINT
ON THE WITHIN NAMED DEFENDANT    GANESAN VISVABHRATHY
PERSON SERVED    SURIYA (WIFE)
I SERVED A MEMBER OF HOUSEHOLD 13 YEARS OF AGE OR OLDER AT THE DEFENDANTS USUAL PLACE OF ABODE AND INFORMED THAT PERSON OF THE CONTENTS THEREOF AND FURTHER MAILED A COPY OF THE SUMMONS OR PROCESS IN A SEALED ENVELOPE WITH POSTAGE PREPAID TO THE DEFENDANT; AT HIS USUAL PLACE OF ABODE WITHIN TWO BUSINESS DAYS OF THE SERVICE.

UNCOOPERATIVE

That the sex, race and approximate age of the person whom I left the    SUMMONS AND COMPLAINT
are as follow:

| | | | | | |
|---|---|---|---|---|---|
| Sex | FEMALE | Race | ARABIC | Age | 51 |
| Height | 5'3" | Build | MEDIUM | Hair | BROWN |

LOCATION OF SERVICE    7529  RIDGEWOOD LANE
BURR RIDGE, IL, 60527

Date Of Service:   12/1/07        Time of Service:    9:15 AM        Date Of Mailing    12/2/2007

MICHAEL P. FEEHAN        12/3/2007

**Special Process Server**
P.E.R.C. #129-157466

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statement are true and correct, except as to matters therein stated to be on information and belief and such matters the undersigned certifies as aforesaid that he/she verily believes same to be true.

**EXHIBIT 3**

Westlaw.

PEOPLE FINDER HOUSEHOLD-CENTRIC RECORD

| | |
|---|---|
| **Information Current Through:** | 11-30-2007 |
| **Database Updated:** | 01-29-2008 |
| **Update Frequency:** | MONTHLY |
| **Current Date:** | 02/19/2008 |
| **Source:** | Data by InfoUSA, Copyright 2008, All Rights Reserved |

### HEAD OF HOUSEHOLD INFORMATION

| | |
|---|---|
| Head of Household: | GANESAN VISVABHARATHY |
| Name/Address Confirmed: | 12/2004 |
| Confirmed by Multiple Sources?: | NO |
| Marital Status: | MARRIED |

### HOUSEHOLD INFORMATION

| | |
|---|---|
| Address: | 7529 RIDGEWOOD LN |
| | WILLOWBROOK, IL 60527-8022 |
| County: | COOK |
| Latitude/Longitude: | 41.752346/-87.90148 |
| Residence Type: | SINGLE FAMILY DWELLING |
| Address First Reported: | 2004 |

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT 4**

Citation              Search Result      Rank(R)  9 of 20       Database
PN: 18 30 408 015 0000                                          ASSET-ALL

REAL PROPERTY TRANSACTION RECORD

Filings Collected Through:   10-24-2007
County Last Updated:         11-14-2007
Frequency of Update:         WEEKLY
Current Date:                11/20/2007
Source:                      RECORDER OF DEEDS
                             , COOK, ILLINOIS

                         OWNER INFORMATION

Owner(s):                    **VISVABHARATHY GANESAN**
Ownership Rights:            TENANTS BY ENTIRETY
Additional Owner #1:         VISVABHARATHY GANESAN
Owner Rights:                TENANTS BY ENTIRETY
Additional Owner #2:         SASTRI SURIYA V
Owner Rights:                TENANTS BY ENTIRETY
Property Address:            7529 RIDGEWOOD LN
                             BURR RIDGE IL 60527-8022
Mailing Address:             7529 RIDGEWOOD LN
                             BURR RIDGE IL 60527-8022

                         PROPERTY INFORMATION

County:                      COOK
Assessor's Parcel Number:    18 30 408 015 0000
Property Type:               SINGLE FAMILY RESIDENCE - TOWNHOUSE
Land Use:                    SINGLE FAMILY RESIDENCE
Building Square Feet:        2806

                         TRANSACTION INFORMATION

Transaction Date:            12/09/2004
Seller Name:                 GRAHAM DONALD G & NANCY B
Sale Price:                  $607,000.00
Deed Type:                   GRANT DEED
Type of Transaction:         RESALE
Recording Date:              12/21/2004
Document Number:             35647050
Title Company:               GREATER ILLINOIS TITLE CO
Construction Type:           RESALE
Purchase Payment:            CASH

TAX ASSESSOR RECORD is available for this property. The record contains
information from the office of the local real property tax assessor office. In
addition to identifying the current owner, the record may include tax assessment
information, the legal description, and property characteristics. Additional
charges may apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains
details about all available transactions associated with this property. The

                (C) 2007 Thomson/West. No Claim to Orig. US Gov. Works.

*Westlaw.*

APN: 18 30 408 015 0000                                                                    Page 1

## REAL PROPERTY TRANSACTION RECORD

Filings Collected Through:01-31-2008
County Last Updated:02-20-2008
Frequency of Update:WEEKLY
Current Date:02/21/2008
Source: RECORDER OF DEEDS      , COOK, **ILLINOIS**

### OWNER INFORMATION

Owner(s):**VISVABHARATHY** GANESAN
Ownership Rights:TENANTS BY ENTIRETY
Additional Owner #1:**VISVABHARATHY** GANESAN
Owner Rights:TENANTS BY ENTIRETY
Additional Owner #2:SASTRI SURIYA V
Owner Rights:TENANTS BY ENTIRETY
Property Address:**7529 RIDGEWOOD** LN
BURR RIDGE IL 60527-8022
Mailing Address:7529 RIDGEWOOD LN
BURR RIDGE IL 60527-8022

### PROPERTY INFORMATION

County:COOK
Assessor's Parcel Number:18 30 408 015 0000
Property Type:SINGLE FAMILY RESIDENCE - TOWNHOUSE
Land Use:SINGLE FAMILY RESIDENCE
Building Square Feet:2806

### TRANSACTION INFORMATION

Transaction Date:12/09/2004
Seller Name:GRAHAM DONALD G & NANCY B
Sale Price:$607,000.00
Deed Type:GRANT DEED
Type of Transaction:RESALE
Recording Date:12/21/2004
Document Number:35647050
Title Company:GREATER ILLINOIS TITLE CO
Construction Type:RESALE
Purchase Payment:CASH
TAX ASSESSOR RECORD is available for this property. The record contains informa-
tion from the office of the local real property tax assessor office. In addition

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

to identifying the current owner, the record may include tax assessment informa-
tion, the legal description, and property characteristics. Additional charges may
apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains de-
tails about all available transactions associated with this property. The report
may include information about sales, ownership transfers, refinances, construction
loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges
may apply.

                    Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
                 to order copies of documents related to this or other matters.
                              Additional charges apply.

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 5

*MHW*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IBA, LLC, a Delaware limited liability company | ) ) ) | |
| Plaintiff, | ) ) | 07 C 6219 |
| vs. | ) ) | Hon. Judge Wayne R. Andersen |
| GANESAN VISVABHARATHY, an individual | ) ) ) | |
| Defendant | ) ) | |

## ORDER

THIS CAUSE coming to be heard on prove up on the Motion of Plaintiff for default judgment; Plaintiff having filed its Complaint on November 2, 2007, and Defendant having been subsequently served; and ~~having failed to file his appearance or answer~~ and the Court being advised in the premises:

IT IS HEREBY ORDERED that judgment is entered in favor of the Plaintiff and against Defendant, Ganesan Visvabharathy, in the amount of $10,348,488.62 as of January 15, 2008 plus per diem interest of $2,557.15 through the date of Judgment. There is no just cause or reason to delay the enforcement or appeal of this order.

DATED: *February 5, 2008*

JUDGE: *[signature]*

Order Prepared By:
Gary I. Blackman (ARDC #6187914)
James G. Martignon (ARDC #6277974)
LEVENFELD PEARLSTEIN, LLC
2 N. LaSalle St., Suite 1300
Chicago, Illinois 60602
(312) 346-8380 - Telephone
(312) 346-8434 – Facsimile
gblackman@lplegal.com
jmartignon@lplegal.com

LP 1526078.1 \ 31849-73240

**EXHIBIT 6**

 **LEVENFELD PEARLSTEIN, LLC**

2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
312.346.8380
Fax: 312.346.8434
www.lplegal.com

**James G. Martignon**
(312) 476-7584
JMARTIGNON@LPLEGAL.COM
CHICAGO OFFICE

February 6, 2008

**VIA ELECTRONIC MAIL & REGULAR MAIL**

Daniel A. Shmickler
Sperling & Slater
55 West Monroe St.
Suite 3200
Chicago, IL 60603

Re:     *IBA, LLC v. Visvabharathy*, Case No. 07-6219
         *Indymac Bank, FSB v. Visvabharathy*, Case No. 07-6224
         *Indymac Bank, FSB v. Visvabharathy*, Case No. 07-6226

Dear Mr. Shmickler:

It is our understanding that Mr. Visvabharathy intends to file Motions to Quash Service of Process, taking the position that he is estranged from his wife and no longer lives at the address at which he was served.

Without waiving any of our client's rights, we again are inquiring, as did Judges Gottschall and Anderson, whether your firm or Mr. Visvabharathy are willing to accept service of process. Alternatively, please provide us with your client's current address so that service can be effected by non-disputed means. Finally, please advise us as to when your client will be returning from India.

We request that you provide us with this information (or your written response) by the close of business Friday.

Sincerely

James G. Martignon

cc:     Gary I. Blackman
         Bruce S. Sperling

LP 1546573.1 \ 31849-73191