UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDYMAC BANK, F.S.B., a Federal Savings Bank, )<br><br>Plaintiff, )<br><br>v. )<br><br>GANESAN VISVABHARATHY, an individual and HAWTHORNE ORLANDO CORPORATION, a Florida corporation, )<br><br>Defendants. ) | No. 07 C 6224<br><br>Judge Ronald A. Guzman |

## DEFENDANT VISVABHARATHY'S HEARING MEMORANDUM IN SUPPORT OF HIS RESPONSE TO MOTION FOR DEFAULT

Defendant Ganesan Visvabharathy submits the following Hearing Memorandum, together with an accompanying Appendix of exhibits, in support of his response to the Motion for Default of plaintiff, Indymac Bank, F.S.B. ("Indymac"):[1]

### Introduction

The evidence in this matter is overwhelming and uncontroverted that defendant Ganesan Visvabharathy was not living at 7529 Ridgewood Lane, Burr Ridge, Illinois, ("Burr Ridge") when Indymac purportedly effected abode service there on December 1, 2007. It is uncontested that Dr. Visvabharathy and his wife (Dr. Suriya Sastri) have been in the process of divorcing since February 2006, and both testified that he moved out in the summer of 2006. Indymac offers no testimony to the contrary – indeed, Indymac offers no witnesses at all, not even its own

---

[1] The parties are submitting their hearing memoranda simultaneously, and no provision has been made for any responses. Accordingly, Dr. Visvabharathy has endeavored to anticipate Indymac's arguments and evidence, based on briefing in this and related matters, and on its designations of potential exhibits. However, Dr. Visvabharathy reserves his right to submit additional objections should Indymac offer inadmissible testimony or materials not addressed herein.

process server.

Dr. Visvabharathy has also provided evidence of two subsequent abodes after Burr Ridge, as he moved from there to an apartment in La Grange, Illinois, and then in November 2007 to his current abode in Chennai, India. These abodes are well-documented. Dr. Sastri herself confirmed Dr. Visvabharathy's move to La Grange, and utility bills in Dr. Visvabharathy's name confirm his residence there. Dr. Visvabharathy has also provided testimony to his subsequent (and current) abode in India, which he has substantiated with bills in his name at that address from the very time that Indymac purports to have served him in Burr Ridge.

Indymac asserts that Dr. Visvabharathy's move to India is somehow insincere, and part of a scheme to dodge service. This is patently false, as demonstrated by the fact that Dr. Visvabharathy has offered to accept service in this and the two related guarantee actions. It is Indymac who will not accept a fair litigation of this matter on the merits, because it does not want to give up its ill-gotten technical default judgment in one of these actions – which it is prosecuting aggressively, even as it acknowledges that the default will likely be vacated. Indymac refuses to agree to Dr. Visvabharathy's offer to accept service unless he agrees to prejudgment attachment, a remedy it could never obtain otherwise.

Unable to present evidence that Dr. Visvabharathy actually lived in Burr Ridge when supposedly served there, Indymac argues for a sort of "constructive abode." The argument relies on the (unproven) notion that Dr. Visvabharathy's move to India is somehow illegitimate, and therefore the Court should impose upon him an abode at a location where he no longer lives. It is not clear by what standard Dr. Visvabharathy's move can said to be a "sham," but the evidence that he moved there and has been living there for over six months is uncontroverted.

Of course, if – as Indymac claims – Dr. Visvabharathy did not effectively relocate his abode in November 2007, then his abode was in La Grange (not Burr Ridge) on December 1, 2007. Instead, Indymac urges the Court to reach back *two* residences, over a year-and-a-half in time, to impose Burr Ridge as Dr. Visvabharathy's abode for purposes of service. This position finds no support in the case law or the facts, and should be rejected.

## Summary of Facts

Dr. Visvabharathy and his wife, Dr. Sastri, are in the process of getting divorced. (Deposition of Ganesan Visvabharathy, Exhibit A to Appendix, at 5; Deposition of Suriya Sastri, Exhibit B to Appendix, at 10). She filed for divorce in February 2006. (Ex. B at 86; Ex. A at 5). Dr. Visvabharathy is not contesting the divorce, but the two remain in disagreement about the division of the marital property. (Ex. A at 5). The divorce proceedings have been contentious, including motions for temporary restraining order, show cause order, and the like. (*See* Exhibits 4, 5, & 6 to Sastri Dep., Ex. B). Pending the resolution of the divorce, the Burr Ridge residence – which Drs. Visvabharathy and Sastri purchased together – remains marital property subject to division, but Dr. Sastri is the one who lives there and who pays the utilities (subject at times to contribution from Dr. Visvabharathy pursuant to court order). (Ex. A at 8-9; Ex. B at 101-03). She refinanced the house last year based solely on her own application. (Ex. B at 56-58; Ex. A at 143).

Dr. Visvabharathy moved out of the Burr Ridge residence in the summer of 2006. (Ex. A at 5-6; Ex. B at 10). He moved out permanently, with no intention of returning to live there, nor did he ever return to live there.[2] (Ex. A at 6). He went to live in an apartment at 400 South

---

[2] Dr. Visvabharathy did, for a few weeks in December 2006 through January 2007, house- and baby-sit at the Burr Ridge residence while Dr. Sastri was in India. (Ex. A at 10; Ex. B at 10-11). But he maintained his residence at La Grange during that time – including keeping

3

Catherine Avenue, La Grange, Illinois. (Ex. A at 9-10). Dr. Visvabharathy had one of the people in his office send in a change of address form to the post office, and he received numerous pieces of mail at the La Grange residence that were forwarded from the Burr Ridge residence. (Ex. A at 6-7). He also had his secretary update his address with those who mistakenly continued to send mail to his wife's house. (*Id.* at 8). Dr. Sastri confirmed that their children went to the La Grange residence to visit their father, and that she herself had been to the abode and knew that that Dr. Visvabharathy was living there. (Ex. B at 13, 52-54). Dr. Visvabharathy has also provided utility bills in his name at that address. (Ex. A at 12-14 & Exhibits 1-2 thereto).

Dr. Visvabharathy moved out of the La Grange residence in late October or early November 2007. (Ex. A at 10, 14, 57). He spent a few days traveling to Cleveland, then proceeded to move permanently to Chennai, India, where he moved in with his cousin at 196/8 Asiad Colony, Anna Nagar West, Chennai 600 101, India. (*Id.* at 4, 14, 63-64). Dr. Visvabharathy has established this as his permanent residence, where he returns after any travel. (*Id.* at 14-15, 18, 22-23). This is where he was living on December 1, 2007. (*Id.* at 104). He has been contributing to household expenses, including the purchase of several appliances for the home, including an air conditioner, refrigerator, washing machine, and computer. (*Id.* at 18-22, 93-94, 104). The invoices for these items show Dr. Visvabharathy at his Chennai address. (Group Exhibit 4 to Visvabharathy Dep., Ex. A).

Sometime in November 2007, Indymac's process server came to the Burr Ridge residence looking for Dr. Visvabharathy. (Ex. B at 15). When Dr. Sastri said that Dr.

---

his possessions there and continuing to pay utilities – and had no intention of returning his abode to Burr Ridge during or after his stay. (Ex. A at 10). This was the only time Dr. Visvabharathy stayed at the Burr Ridge residence after he left in the summer of 2006. (*Id.*).

4

Visvabharathy did not live there, the server threatened Dr. Sastri with harassment, saying that he would return late at night, and that he would seek information about Dr. Visvabharathy from their children. (*Id.* at 15-16). Indymac's process server returned on December 1, 2008 and lied to Dr. Sastri, saying that the Court had specifically ordered that service be made at her home. (*Id.* at 16). She again told him that Dr. Visvabharathy did not live there, but the process server left the summons at Dr. Sastri's door anyway when she would not accept it. (*Id.* at 17).

Dr. Sastri believes she told Dr. Visvabharathy that that she had received "some kind of legal documents" relating to "some kind of lawsuit by the bank." (Ex. B at 71). Dr. Sastri thinks she "may have sent just a couple of pages" that she considered "relevant" – because the total package was "voluminous" and "some things were like really jargon there" – to Michael Collins, a lawyer who had done the couple's estate planning work. (*Id.* at 72-73, 76-77). Dr. Visvabharathy has no knowledge of Dr. Sastri sending any papers related to Indymac to Mr. Collins. (Ex. A at 28).

Dr. Visvabharathy learned of these proceedings in time to respond to Indymac's motion for default. However, he did not learn of the default proceedings in the two related actions, *Indymac, F.S.B. v. Visvabharathy*, No. 07 C 6226 (Gottschall, J.) and *IBA, LLC v. Visvabharathy*, No. 07 C 6219 (Andersen, J.), until orders of default had been entered. Dr. Visvabharathy's counsel then filed appearances in both actions and requested an opportunity to vacate the defaults. Judge Gottschall set the matter for such proceedings, while Judge Andersen entered a default judgment and advised Dr. Visvabharathy to file a Rule 60 motion to vacate the judgment (which he has filed). Indymac has been aggressively pursuing citations to discover assets in that action (*see* citations to Private Bank and Trust Co., 222 East Pearson Condominium Association, and 222 East Pearson REO, LLC, Group Appendix Exhibit C), even while it

concedes in communications with Dr. Visvabharathy's counsel that the defaults are likely to be vacated (*see* April 2, 2008 email from Indymac's counsel, Appendix Exhibit F).

Indymac has asserted that Dr. Visvabharathy is attempting to evade service in this matter, but the conduct of the parties is not consistent with that claim. Over a month ago, Dr. Visvabharathy offered to provide his current address in India so that Indymac could serve him pursuant to Federal Rule of Civil Procedure 4(f), but Indymac did not even respond to the offer. (*See* March 7, 2008 email from Dr. Visvabharathy to counsel for Indymac, Appendix Exhibit D). Dr. Visvabharathy subsequently offered repeatedly to accept service in this and the related cases, but Indymac will not agree unless he consents to prejudgment attachment. (*See* March 13, 2008 email from Dr. Visvabharathy to counsel for Indymac, Appendix Exhibit E; Ex. F).

## Argument

### A. Dr. Visvabharathy Did Not Live At The Burr Ridge Residence On December 1, 2007, The Date Of Purported Abode Service

It is Indymac's burden to prove that it effected proper service on Dr. Visvabharathy, and therefore subjected him to the personal jurisdiction of the Court. *Homer v. Jones-Bey*, 415 F.3d 748, 758 (7th Cir. 2005). Indymac claims it served Dr. Visvabharathy pursuant to Rule 4(e)(2)(B) of the Federal Rules of Civil Procedure, which permits service by leaving process at the individual's "dwelling or usual place of abode" with another individual who resides there. Indymac asserts that it did so by leaving a copy of process with his wife at Dr. Visvabharathy's "usual place of abode" at the Burr Ridge residence on December 1, 2007. (Motion for Default ¶ 3). But the testimony of the only witnesses in this proceeding, together with Dr. Visvabharathy's bills from subsequent residences, plainly establish that he was not living at the Burr Ridge residence on December 1, 2007, and had not lived there for about a year and a half.

When a defendant no longer lives there, leaving process with an estranged spouse at the

former marital residence is not sufficient to accomplish abode service. *Williams v. Capital Transit Co.*, 215 F.2d 487, 489-90 (C.A.D.C. 1954) ("Of course, if the defendant did not in fact reside at [the former marital residence], it was not his 'usual place of abode' even if his wife, from whom he was separated, still resided there."); *Government Employees Ins. Co. v. Jackson*, No. CIV.A. 89-4010, 1995 WL 672830, at *2 (E.D. Pa. Nov. 6, 1995) (holding ineffective plaintiff's service on spouse, from whom defendant was separated) (a copy of this unpublished opinion was attached as Exhibit C to Dr. Visvabharathy's Response to Motion for Default); *see also Chiaro v. Lemberis*, 171 N.E.2d 81, 85 (Ill. App. Ct. 1960) (holding that substituted service was not effective when made on defendant's wife, from whom he was separated, because they no longer shared an abode).[3]

Indymac has pointed to the fact that Dr. Visvabharathy still owned (and owns) a proprietary interest in the Burr Ridge residence to argue that it should be considered his abode. Indymac has also noted that Dr. Visvabharathy contributed (at times) to the utilities and other household expenses there.[4] But Dr. Visvabharathy owns a proprietary interest in the Burr Ridge residence only pending the outcome of his divorce, and has paid household expenses only when ordered to do so by the divorce court as part of his spousal support obligations. (Ex. A at 8-9;

---

[3] Indymac's only attempted citation to supposedly contrary authority is to *Rosa v. Cantrell*, 705 F.2d 1208 (10th Cir. 1982), where the court found valid abode service when process was left with the defendant's wife at the marital residence. But in *Rosa*, the husband was merely absent from the home; there was no evidence that they were in the process of separation or divorce, or that he had moved to any other abode. *Id.* at 1214 ("The existence of another abode has not been brought to anybody's attention in this case.").

[4] Indymac is also expected to point to the fact that Dr. Visvabharathy left behind some old clothing, books, and magazines at the Burr Ridge residence. (Ex. B at 82-83; Ex. A at 101-02). But Dr. Sastri described them as "clothes he never wears," and testified, "he has already taken whatever that he would use." (Ex. B at 82-83). In fact, the only reason that she has not yet thrown these things away is that she hasn't gotten around to it yet. (*Id.* at 84). Dr. Visvabharathy has not returned to her residence to retrieve any of these items, has no plans to do so, and does not care if Dr. Sastri simply throws it all away. (Ex. A at 9).

7

Ex. B at 101-03). If these circumstances were sufficient to establish abode, any separated spouse would be subject to service at the marital home, given that marital property is divided only upon finalization of divorce proceedings. The case law is to the contrary, as courts look to where a defendant *lives*, not where he has an ownership interest, to determine abode. *See, e.g., In re Daboul*, 82 B.R. 657, 660 (Bankr. D. Mass. 1987) (courts require more than "mere ownership" of alleged abode to find proper service); *see also Frasca v. Eubank*, 24 F.R.D. 268, 270 (E.D. Pa. 1959) ("[T]he terms 'dwelling house' and 'usual place of abode' cannot be given an artificial meaning."). Accordingly, even if the defendant is only separated, and not yet divorced, the marital home is not his abode if he is no longer living there. *Williams*, 215 F.2d at 489-90; *Government Employees Ins. Co.*, 1995 WL 672830, at *2. Courts even differentiate between the abodes of a husband and wife when they are simply living in different residences, regardless of intent or effort to divorce. *See Leigh v. Lynton*, 9 F.R.D. 28, 29 (E.D.N.Y. 1949) (holding service on wife in New York insufficient when her defendant husband had returned to live in England).

Having no witness who can testify that Dr. Visvabharathy lived at the Burr Ridge residence at the time of purported abode service, Indymac attempts to submit two hearsay documents with outdated information: a result it obtained from Westlaw's "People Finder" database, and a form from the post office supposedly showing that Dr. Visvabharathy is "still at" the Burr Ridge address. The "People Finder" entry is pure hearsay, inadmissible for any purpose. No individual is authenticating it, or the manner in which the underlying information was gathered or maintained, or when it was last updated, much less attesting to its accuracy on December 1, 2007. Indeed, the document on its face does not even purport to be "current" through that date.

The post office form consists of a request that Indymac's process server made, long after the fact, regarding Dr. Visvabharathy's address.[5] In the section marked, "For Post Office Use Only," there is an "x" next to "still at address." Indymac says this shows that Dr. Visvabharathy still lives at the Burr Ridge address. As an initial matter, this form is also hearsay, and similarly lacks any witness – including Indymac's process server – to authenticate it.[6] But even if this document were to be treated as non-hearsay, its probative value is minimal, given that no witness is testifying as to the manner in which the underlying information was gathered or maintained, much less attesting to its accuracy on December 1, 2007. Indeed, this "x" is directly contradicted by Drs. Visvabharathy and Sastri, both of whom testified that he moved out of Burr Ridge and into the La Grange residence in the summer of 2006. (Ex. A at 5-6; Ex. B at 10). Dr. Visvabharathy further testified that he instructed one of his office workers to submit a change of address form, that he received numerous items of forwarded mail at his La Grange address, and that he had his secretary update his address with anyone sending substantive mail to his former Burr Ridge address. (Ex. A at 6-8). At most, if the post office form were accepted as authentic, all it would establish is that the post office has an old address on file for Dr. Visvabharathy.

---

[5] From the form, it appears that Indymac's process server submitted the form on or about March 10, 2008. If he made a similar request prior to attempting to perform abode service on December 1, 2007, Indymac has not provided any evidence of the request or the result.

[6] Pursuant to Federal Rule of Evidence 803(8), certain public records are excepted from the hearsay rule, if they are "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report...." This form does not clearly fall into this category but, even if it did, it does not qualify as a self-authenticating domestic public document under seal, pursuant to Rule 902(1). Accordingly, for this form to be admissible, Indymac was required to authenticate it pursuant to Rule 901. Given the fact that the entire probative value of the form rests on a single handwritten "x," this is not the mere technicality that Rule 901 authentication often is.

**B.     The Court Should Not Impose A "Constructive Abode" On Dr. Visvabharathy At The Burr Ridge Residence**

Unable to refute the evidence that Dr. Visvabharathy moved out of the Burr Ridge residence more than a year before the supposed abode service there, Indymac has attacked Dr. Visvabharathy's subsequent move to India as a supposed sham to dodge service. This is manifestly untrue because, rather than dodge service, Dr. Visvabharathy has offered to accept it, despite his residence in India and Indymac's plainly ineffective abode service. The uncontroverted evidence also establishes that Dr. Visvabharathy's abode was in Chennai, India on December 1, 2007. Indymac's argument is ultimately unavailing, because if the Court were to disregard Dr. Visvabharathy's move to India, his last proven abode was in La Grange, not in Burr Ridge – which is two abodes prior to his current one, a residence he had not lived in over a year, and a house where the resident (his estranged wife) is a hostile and unreliable source for ensuring that he receives proper notice of service of process.

**1.     Dr. Visvabharathy Has Been Attempting To Accept Service, Not Dodge It**

Contrary to Indymac's characterizations, Dr. Visvabharathy has been trying to reach an agreement that would *effectuate* service. First, he offered to provide Indymac with his address in India, where he was amenable to service pursuant to Federal Rule 4(f). (Ex. D). Indymac refused even to respond. Then, Dr. Visvabharathy twice offered simply to accept service, if Indymac would agree to vacating the defaults and to providing him with a reasonable period of time to answer the three guarantee actions. (Exs. E & F; Ex. A at 28-29). Indymac twice refused, and says it will not even consider such an offer unless it includes an agreement to prejudgment attachment – a remedy that is otherwise barred under federal law. (Ex. G); *see Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 321, 333 (1999) (reversing entry of preliminary injunction preventing defendants from disposing of assets, in

light of "the well-established general rule that a judgment establishing the debt was necessary before a court of equity would interfere with the [defendant's] use of his property"). It is not Dr. Visvabharathy who is dodging service, but Indymac that is seeking to prevail on a technicality, and prevent Dr. Visvabharathy from ever having the opportunity to assert his defenses.

2. **The Record Establishes The *Bona Fides* Of Dr. Visvabharathy's Move To India**

Another fault in Indymac's "sham abode" theory also fails because the evidence establishes that Dr. Visvabharathy did, in fact, move to India in November 2006. His testimony that he moved is uncontroverted by anyone with personal knowledge – Indymac can present no witness to testify that Dr. Visvabharathy has been living anywhere but Chennai, India for the past six months. Dr. Visvabharathy has also documented his move to India with bills relating to his residence there. Although, as a cultural matter, he does not pay rent to his cousin (who rents the house), he assists with grocery and school expenses, and has bought numerous items for the home. (*Id.* at 18-22, 93-94, 104). Invoices for an air conditioner, washing machine, refrigerator, and computer all bear Dr. Visvabharathy's name and his address in Chennai. (Group Exhibit 4 to Visvabharathy Dep., Ex. A). They also span the very time period – November through December 2007 – when Indymac was purportedly effecting abode service on Dr. Visvabharathy in Burr Ridge. (Ex. A at 19-22 & Group Exhibit 4 thereto).

Dr. Sastri testified that Dr. Visvabharathy is "probably" living in India, though she expressed her opinion that his move is not permanent. (Ex. B at 93-94). Dr. Sastri's opinion lacks foundation (rendering it inadmissible), as she conceded that it is only her conjecture based on the fact that Dr. Visvabharathy has remaining business interests and children here in the United States. (*Id.* at 95). Even this conjecture is contradicted by the facts, because Dr. Visvabharathy testified that he has only one remaining business project here, which he is able to

11

manage via his staff from India, while the prospects for future business are in India, which is why he moved. (Ex. A at 15, 23, 117). All but one of his children are grown, and he is making plans for visits with his minor daughter, including a possible two-month visit by her to India this summer. (Ex. A at 23-24).[7]

At his residence in Chennai, Dr. Visvabharathy has his own room, shares household expenses, keeps his belongings at the home, and always returns there after travel. (Ex. A at 18, 93-94, 100-01, 104). In other words, the factors cited in Indymac's own cases as evidence of abode all apply to Dr. Visvabharathy's residence in Chennai, India, and none to his wife's residence in Burr Ridge. *See, e.g., Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994) (defendant "maintains a private bedroom, clothes and a phone line at that address"); *Capitol Life Ins. Co. v. Rosen*, 69 F.R.D. 83, (E.D. Pa. 1975) (defendant had "a regular room… paid rent and helped share expenses… [and] kept his clothing and any other belongings at the house").

    3.    **Indymac's "Sham" Argument Does Not Justify Finding The Burr Ridge Residence Of His Hostile, Estranged Wife To Be Dr. Visvabharathy's Abode**

Indymac's "sham abode" argument also provides no basis to conclude that the Burr Ridge residence was Dr. Visvabharathy's abode on December 1, 2007. At best, if Indymac could prove that Dr. Visvabharathy's move to India was not a *bona fide* change in abode (presuming any authority or evidence supported that challenge), that would leave the La Grange

---

[7] It is expected (based on its examination of Dr. Visvabharathy) that Indymac will attempt to make much of Dr. Sastri's separate testimony that Dr. Visvabharathy supposedly told her that he was going to return from India. (Ex. B at 98). But to assert that she was talking about his residence would be a distortion of her testimony. In context, Dr. Sastri testified that Dr. Visvabharathy told her he would be returning as part of his "going back and forth" between India and Chicago – in other words, that he would be *visiting* from time to time. (*Id.* at 97-98). Most significantly, she *never* testified that she had any belief or expectation that Dr. Visvabharathy would ever again live at the Burr Ridge residence, leaving no basis to conclude that it was his "usual place of abode" at any time after the summer of 2006.

residence as his last dwelling. There is no authority for the proposition that a challenge to the permanence of a subsequent move can justify imposing an abode that is two residences past, from which Dr. Visvabharathy had moved more than a year prior.

Moreover, if the Court were to engage in seeking a "constructive" abode for Dr. Visvabharathy, his wife's Burr Ridge home is particularly unsuited to the role. The essence of proper service is to protect a defendant's due process right to "the opportunity to be heard.... [which] has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal citation omitted). Proper service of process must be reasonably designed to provide "prompt and certain" notice to the defendant. *Greene v. Lindsey*, 456 U.S. 444, 451 n.4 (1982) (striking down provision in Kentucky law permitting service of forcible entry and detainer action by posting it on defendants' doors because it violated due process).

Construing the home of Dr. Visvabharathy's estranged wife as his abode would not comport with due process. As is abundantly clear from the record, Dr. Visvabharathy and his wife are engaged in a particularly contentious divorce, rife with motions for temporary restraining order, show cause order, and the like. (*See* Exhibits 4, 5, & 6 to Sastri Dep., Ex. B). Given the substantial hostility between the two, the estranged wife should not be deemed a reliable intermediary to provide him with "prompt and certain" notice of actions delivered to her.

The facts in this case prove the point. Dr. Sastri testified that the process in this and related matters were left at her house, but she only told him that she had received "some kind of legal documents" relating to "some kind of lawsuit by the bank." (Ex. B at 71). She then "may have sent just a couple of pages" that she considered "relevant" – because the total package was

13

"voluminous" and "some things were like really jargon there" – to Michael Collins, a lawyer who had done the couple's estate planning work. (*Id.* at 72-73, 76-77). It is not clear what Dr. Sastri sent to Mr. Collins, but Dr. Visvabharathy has no knowledge that she did so, and Mr. Collins was himself not authorized to accept service. (Ex. A at 28). In the end, Dr. Visvabharathy learned of these default proceedings in time to respond to Indymac's motion for default, but did not learn of them in the two related matters until later, when orders for default had already been entered, at which point he promptly appeared and sought to vacate the defaults.[8] His conduct in this regard further evidences that he did not, as a matter of fact, receive "prompt and certain" notice of proceedings.

The haphazard and partial "notice" achieved by Indymac's attempted service at Dr. Sastri's home demonstrates why courts have consistently held that the former marital home is simply not the abode of the absent spouse. Abode service is to be made where the defendant lives, not where an indifferent or hostile estranged spouse is the resident.

### 4.  Indymac's Anticipated "Multiple Abodes" Argument Is Unavailing

Based on one of its filings in the related matter pending before Judge Gottschall, Dr. Visvabharathy anticipates that Indymac will argue that it is possible for an individual to have more than one abode. But this theoretical possibility does not aid Indymac, because even the courts recognizing that possibility have held that each asserted abode must still bear "sufficient indicia of permanence" to qualify as such. *In re Xacur*, 219 B.R. 956, 967 (Bankr. S.D. Tex. 1998); *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 280 (S.D.N.Y. 1994).[9]

These courts, in finding that a defendant was served at one of multiple abodes, relied on

---

[8] This sequence of events is evident in the docket reports for Case Nos. 07 C 6219 and 07 C 6226, attached as Exhibits G and H, and of which the Court may take judicial notice.

[9] These are the cases Indymac cited for this proposition in its filing to Judge Gottschall.

the fact that the defendant stayed at the address of service regularly, together with multiple additional indicia that the defendant treated it as a permanent abode. *See In re Xacur*, 219 B.R. at 960 (noting that defendant owned the condominium in question, spent 10% of the year there, and held a driver's license showing it as his home address); *Jaffee & Asher*, 158 F.R.D. at 280 (noting that defendant maintained a private bedroom and phone line at the address of service and, "equally as important," had previously represented to plaintiff itself that his was his residence). By contrast, Dr. Visvabharathy did not stay regularly at his wife's home, and there are no indicia that it was a permanent abode for Dr. Visvabharathy on December 1, 2007. Among other things, he was not living there, maintained no room or telephone line there for his regular use, and had no intention of returning to live there. There is no evidence that Dr. Visvabharathy had multiple abodes on December 1, 2007, much less that his wife's Burr Ridge residence was such an abode.

### Conclusion

WHEREFORE, defendant Ganesan Visvabharathy respectfully requests that this Court find that plaintiff Indymac Bank, F.S.B did not accomplish abode service on him, deny the motion for default, and award such other and further relief as the Court deems proper.

Respectfully submitted,

GANESAN VISVABHARATHY

By: _____
One of his attorneys

Bruce S. Sperling
Daniel A. Shmikler
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
(312) 641-3200
(312) 641-6492 (fax)

## CERTIFICATE OF SERVICE

I, Daniel Shmikler, an attorney, hereby certify that on April 15, 2008 I served a true and correct copy of **DEFENDANT VISVABHARATHY'S HEARING MEMORANDUM IN SUPPORT OF HIS RESPONSE TO MOTION FOR DEFAULT** by hand delivery to the following persons listed below:

> Gary I. Blackman, Esq.
> James G. Martignon, Esq.
> Levenfeld Pearlstein, P.C.
> 2 North LaSalle Street
> Suite 1300
> Chicago, Illinois 60602

_____
Daniel A. Shmikler